IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAROL SUE HART                     *
                                   *
     v.                            *       Civil No. JFM-08-2516
                                   *
BON SECOURS BALTIMORE HEALTH       *
SYSTEM, *et al.*                   *
                                   *
                                ******

## MEMORANDUM

Plaintiff Carol Sue Hart ("Plaintiff") brings this employment discrimination action against Bon Secours Baltimore Health System ("Bon Secours") alleging age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and retaliation under the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"). Plaintiff also brings an action for defamation against Bon Secours and LuAnn Brady ("Brady") (collectively "Defendants"). Now pending before me is Defendants' motion for summary judgment and Plaintiff's cross-motion for partial summary judgment. For the following reasons, Defendants' motion for summary judgment is granted and Plaintiff's motion is denied.

## I. FACTS

Plaintiff was the Director of Ancillary Services at Bon Secours from April 2001 through August 2007. (First Am. Compl. 2–3, Dec. 5, 2008.) In that role, Plaintiff oversaw the cardiology, EKG, imaging, respiratory/pulmonary, and physical therapy services departments. (Ex. 2, Job Description for Directory, Ancillary Services.) Until April 2007, Plaintiff reported to Vivian Jones, Senior Vice President of Operations, from whom she received excellent performance evaluations. (Ex. 5.) After that time, Plaintiff's supervisor was LuAnn Brady, who was hired on April 30. (Ex. 7, Brady Dep. 14:19, Oct. 5, 2009.)

1

During the summer of 2007, Brady ordered a review of the departments under Plaintiff's supervision as part of a broader restructuring at Bon Secours. The auditor who conducted the review concluded that the department structure needed to be changed and that Plaintiff was "trying to do everything in all areas" and needed "some good people in key positions that can be assigned some of the duties." (Ex. 8 at BSHS 123.) After receiving the review and discussing potential restructuring plans with Plaintiff, Brady decided to reduce the number of departments under Plaintiff's supervision, and changed her position to Director of Imaging. (Ex. F at BSHS 142.) On August 17, Brady informed Plaintiff of this decision and told her to think about the restructuring and her reassignment over the weekend and to consider whether she wanted to continue working for Bon Secours in her new role. (Ex. G, Brady Aff. 1.) On Monday, August 20, Plaintiff informed Brady that she had decided to remain at Bon Secours as Director of Imaging. (Ex. 9, Hart Dep. 262:7–22, Oct. 15, 2009.)

Plaintiff suffered from stress and headaches and scheduled an appointment with her doctor for Tuesday, August 21. (Hart Dep. 68:3-11.) Her doctor diagnosed her with high blood pressure and acute stress disorder and instructed her to take two weeks off from work. (Ex. 12, Hart Medical Records.) Plaintiff provided Bon Secours with a doctor's note to that effect and requested FMLA leave, which was approved. (Ex. 13, Doctor's Note dated Aug. 21, 2007; Ex. 14, FMLA Leave Forms.)

On August 23, Brady met with a number of Plaintiff's subordinates to inform them about the structural changes to the Ancillary Services Department and to arrange coverage of Plaintiff's duties while she was on FMLA leave. (Ex. K, Mem. to File.) During these meetings, Brady discussed Plaintiff's job performance and management style. Afterward, Brady noted in a memorandum that Plaintiff exhibited a lack of leadership and an unwillingness to delegate to or

empower subordinates. (*Id.*) As a result, Brady decided to refer Plaintiff to the Employee Assistance Program upon her return to work. (Ex. 17, Referral to EAP Mem.) On September 4, Plaintiff received a note from her doctor clearing her to return to work for half days beginning September 5, two weeks after her FMLA leave began. (Ex. 18.) Brady, who had to be out of town for a family emergency that day, did not want Plaintiff to return to work until they had a chance to further discuss Plaintiff's new role, so Brady placed Plaintiff on administrative leave until September 12. (Ex. 20, Email dated Sept. 4, 2007; Hart Dep. 281:5–7.)

While Plaintiff was on administrative leave, Brady informed Bon Secours C.E.O. Samuel Ross ("Ross") that she had decided to terminate Plaintiff for the reasons outlined in her earlier memorandum. (Ex. 21, Email dated Sept. 10, 2007.) In response to Brady's email, Vice President of Human Resources Sherine High emailed Ross to express her concern that terminating Plaintiff at that time would not be "aligned with the core values of Bon Secours" and that Plaintiff should be given a chance to address the issues raised by Brady and adjust to her new position. (Ex. 22.)

During this period, multiple issues arose with respect to the certification of the hospital's Pulmonary Blood Gas Laboratory. The lab required certification from the College of American Pathologists ("CAP certification") and a license issued by the state of Maryland under the Clinical Laboratory Improvement Amendments ("CLIA license"). (Ex. X, Pulmonary Lab Investigation Report at BSHS 26.) Patricia Hardy-Avens, who became the Senior Manager of Respiratory Care after the reorganization of ancillary services, had noticed an expired CAP certification in the lab. (*Id.* at BSHS 27.) An auditor for Bon Secours Health System looked into the matter and wrote in an email on September 5 that the CAP invoice had not been paid on time. (Ex. U.) During the process of obtaining a current CAP certification, Hardy-Avens

3

learned that an invoice for the CLIA license had also not been paid, and she informed Brady, who organized a conference call on September 12 with a "team of experts" to discuss the lab certification issues. (Ex. 23, Email dated Sept. 12, 2007.) Following the call, the hospital's Corporate Responsibility Officer began an investigation into how the CLIA license lapse had occurred. (Brady Dep. 25:12–15)

Plaintiff returned to work on September 12 as instructed the week before, but was immediately suspended pending the results of the investigation into the CLIA license. (Ex. HHH, Suspension Letter.) In a report issued on September 21, the Corporate Responsibility Officer concluded that Plaintiff bore the responsibility for the lapse. (Ex. X at BSHS 29.) Brady then recommended to Ross that Plaintiff be terminated. Ross accepted this recommendation, and on October 1, 2007, Brady sent Plaintiff a letter, which said she was being terminated "based on the results of [the] investigation into the Pulmonary Blood Gas Lab's de-certification and [Plaintiff's] role in failing to maintain certification through ensuring timely payment of required fees . . . ." (Ex. 29.) At a staff meeting shortly afterward, Brady told Plaintiff's subordinates that she would not be returning "because she had been terminated, and she's going to be, and she is being investigated." (Ex. XX, Branch Dep. 17:3–5, Oct. 22, 2009.) Plaintiff was fifty-five years old at the time of her termination. (First Am. Compl. 2; Ex. 29.)

Following Plaintiff's termination, Bon Secours began the interview process for a replacement. (Ex. PP, Candidate Résumés.) On December 3, Brady distributed a memorandum to Bon Secours employees who participated in the interview process informing them that she had decided not to hire any of the candidates. (Ex. QQ.) Instead, forty-one-year-old Chris Shepperson, the Director of Clinical Operations for Ivy Ventures, a radiology consultant with a longstanding relationship with Bon Secours, would assume responsibility as interim Director of

Imaging.  (*Id.*)  Finally, on May 1, 2008, Bon Secours hired Theodore Williams, age sixty-one, as Senior Director, Clinical Diagnostic Services, with responsibility for the imaging department.  (Ex. 34. Revised Offer of Employment Letter.)

## II.  **STANDARD OF REVIEW**

A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The substantive law of the cause of action determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)).

## III.  **COUNT I: AGE DISCRIMINATION**

A plaintiff may defeat summary judgment and establish a claim for age discrimination by demonstrating through direct evidence that "age discrimination motivated the employer's adverse employment decision" or by proceeding under the burden-shifting scheme established by *McDonnell Douglas*.  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Here, Plaintiff does not allege direct evidence of discrimination but rather proceeds under the *McDonnell Douglas* framework.  Under this scheme, Plaintiff must first establish a prima facie case, and if she does

so, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Hill*, 354 F.3d at 285)). This burden is one of production, not persuasion. *Id.* Once the employer articulates a nondiscriminatory reason, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Hill*, 354 F.3d at 285 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

### The Prima Facie Case

To establish a prima facie case under the ADEA, a plaintiff must demonstrate four elements: 1) she is a member of the protected class; 2) she was qualified for her position and met her employer's legitimate expectations; 3) she was discharged despite her qualifications and performance; and 4) she was replaced by or treated less favorably than a substantially younger individual with similar qualifications. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996)). The Fourth Circuit has recognized in Title VII cases that a plaintiff need not meet the fourth element of a prima facie case if she can show that "the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination." *Miles v. Dell*, 429 F.3d 480, 486 (4th Cir. 2005). Although the Fourth Circuit has not extended this exception to any ADEA cases, as I noted in my ruling on Defendants' Motion to Dismiss, I find no principled reason to rule that such an exception does not apply in the ADEA context. Mem. to Counsel Re: Carol Sue Hart v. Bon Secours Baltimore Health System, et al. Civil No. JFM-08-2516, ECF No. 19.

It is undisputed that Plaintiff has met the first three elements of the prima facie case. However, Plaintiff has not satisfied the fourth element because her claims that she was both

replaced by and treated less favorably than someone substantially younger are not supported by evidence sufficient to survive summary judgment. Plaintiff first asserts that her replacement was forty-one-year-old Chris Shepperson, the interim Director of Imaging, and not sixty-one-year-old Theodore Williams. This argument is without merit. Shepperson was an employee of Ivy Ventures, a consulting firm, and not an employee of Bon Secours itself. In addition, he served only for the period during which Bon Secours conducted a search for a replacement for Plaintiff. Similarly, Plaintiff's argument that Williams did not replace her because he was hired into a different position must also fail. Whether or not his job title or responsibilities were precisely the same, no reasonable jury could find that he did not assume the responsibilities previously assigned to Plaintiff, and thus replaced her. Plaintiff even acknowledges that Williams's job responsibilities were identical to those of her previous position as Director of Ancillary Services.

Nor has Plaintiff provided sufficient evidence to show that she was treated less favorably than someone substantially younger. Both parties acknowledge that to do so, the Plaintiff must furnish evidence that she was treated less favorably than someone "similarly situated." "Similarly situated" individuals "must have dealt with the same supervisor, been subject to the same standards, and have engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Duggan v. Sisters of Charity Providence Hospitals*, 663 F. Supp. 2d 456, 468 (D.S.C. 2009) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)); *see also Lightner v. City of Wilmington*, 545 F.3d 260 264-65 (4th Cir. 2008).

The one individual Plaintiff points to as being similarly situated does not meet this standard. Plaintiff asserts that Rick Braam was similarly situated because he allegedly failed to provide a Medicare provider number for a mobile MRI unit, which was closed in July 2007, and

that this failure was analogous to the failure to maintain an up-to-date CLIA license. Therefore, she concludes, the fact that the then forty-one-year-old Braam was not disciplined shows that she was treated less favorably than someone significantly younger. However, Plaintiff acknowledges that Braam did not have the same supervisor. More importantly, Plaintiff has not provided evidence to show that she and Braam were subject to the same standards or engaged in "the same conduct" let alone that there were not "differentiating or mitigating circumstances." *See Duggan*, 663 F.Supp.2d at 468. Plaintiff has made no showing of how either Braam's responsibilities or conduct were similar to hers, and the circumstances of the two situations were very different, given that the MRI issue concerned only cost reimbursement for a new mobile unit, not the legal authorization to operate an existing hospital lab.

Finally, I find that Plaintiff has not provided sufficient evidence to meet the requirements of an exception to the general rule that she show replacement by someone substantially younger. The only evidence that Plaintiff has offered to suggest Williams was hired to replace her in order to disguise discrimination is that other individuals at Bon Secours were terminated and replaced with younger employees during part of a restructuring. Apart from vague speculations that something bad was taking place at Bon Secours, Plaintiff has not produced evidence that shows either that her firing resulted from age discrimination or that the hiring of her replacement was intended to disguise such discrimination, and therefore she cannot be exempted from showing the fourth element of the prima facie case. As discussed above, Plaintiff has not provided evidence showing that she was replaced by or treated less favorably than someone substantially younger and therefore has not satisfied the fourth element.

## Pretext Analysis[1]

---

[1] Although I find that Plaintiff has not made out a prima facie case because she did not meet the legitimate expectations of her employer, I think it is helpful to ensure that the Defendant's reasons were not pretextual.

Even if Plaintiff had made out a prima facie case, the Defendant met its burden to provide evidence of a legitimate, non-discriminatory reason for Plaintiff's dismissal—problems with Plaintiff's job performance, particularly the lapse in CLIA licensing of the Pulmonary Gas Lab due to unpaid invoices—and so Plaintiff would need to show by a preponderance of the evidence that the legitimate reason offered by Defendant is a pretext. *Hill*, 354 F.3d at 285. Plaintiff has not met this burden. In order to show pretext, Plaintiff "must do more than simply show the articulated reason is false; [s]he must also show that the employer discriminated against [her] on the basis of age." *Laber v. Harvey*, 438 F.3d 404, 430-31 (4th Cir. 2006). Although "[i]n some cases . . . proof that the employer's reason is false is sufficient to show age discrimination when combined with the plaintiff's prima facie case," *id.*, this combination is not always enough to meet the burden of showing pretext. *See Reeves*, 530 U.S. at 138 ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."). Plaintiff has not presented evidence sufficient for a reasonable jury to find either that Defendants' non-discriminatory reason was false or that Defendants discriminated against her on the basis of her age.

The pretext inquiry must focus on the perception of the decision maker and whether its stated reason is credible. *Holland*, 487 F.3d at 217. Even if Plaintiff is right that the CLIA license investigation was flawed, "it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Bonds v. Leavitt*, 647 F. Supp. 2d 541, 559 (D. Md. 2009) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Although Plaintiff presents evidence disputing the finding that she was responsible for the lab decertification and raising the

possibility that Defendants may have been incorrect to think that she was, she has failed to produce evidence that shows the Defendants did not believe she was responsible or that they did not fire her as a result of this belief. And, as discussed above, Plaintiff has not provided specific evidence to show that she was fired because of her age. As a result, the Defendants' motion for summary judgment is granted with respect to Count I, and the Plaintiff's motion for summary judgment is denied.

## IV.  COUNT II: FMLA RETALIATION

Plaintiff also claims that she was fired in retaliation for taking FMLA leave. The FMLA states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Evaluation of FMLA retaliation claims proceeds under the same burden-shifting analysis applied to the ADEA count, whereby a plaintiff must present a prima facie case, the employer must present a non-discriminatory explanation, and the plaintiff then bears the burden of showing that this explanation is a pretext. *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). The prima facie case requires that Plaintiff "show that [s]he engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the [P]laintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

It is undisputed that Plaintiff engaged in a protected activity by taking FMLA leave and that the employer took adverse action against her by terminating her. Plaintiff was fired only a few weeks after returning from FMLA leave, and while such temporal proximity "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Williams v. Cerberonics, Inc.*, 871 F.2d 452,

457 (4th Cir. 1989). Thus Plaintiff has met the third requirement and established a prima facie case. However, Defendants have offered a legitimate non-discriminatory explanation for firing Plaintiff. The events giving rise to this explanation took place months before Plaintiff's FMLA leave and were unrelated to such leave, and for the reasons already discussed, Plaintiff has failed as a matter of law to meet her burden of showing that this non-discriminatory reason was a pretext. Therefore, Defendants' motion for summary judgment is hereby granted with respect to Count II and the Plaintiff's motion for summary judgment is denied.

## V. COUNTS III AND IV: DEFAMATION

Plaintiff asserts two claims for defamation based on Brady's statement in a staff meeting that she had been terminated after an internal investigation. Taken in the light most favorable to the Plaintiff, the evidence shows that Brady told Plaintiff's subordinates that she "was not coming back because she had been terminated and she is going to be, and she is being investigated." Under Maryland law, a private person can establish a prima facie case of defamation by showing:

> (1) that the defendant made a defamatory communication—i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm.

*Shapiro v. Massengill*, 661 A.2d 202, 216-17 (Md. Ct. Spec. App. 1995).

Plaintiff has satisfied the first element because, as I have already ruled, Brady's statement could reasonably be construed as imputing misconduct or unfitness of the Plaintiff, and therefore is defamatory per se under Maryland law. Mem. to Counsel Re: Carol Sue Hart v. Bon Secours Baltimore Health System, et al. Civil No. JFM-08-2516; *see generally Shapiro*, 661 A.2d at 218; *Hearst Corp. v. Hughes*, 466 A.2d 486, 489 (Md. 1983). However, Plaintiff has not satisfied the

second element because she cannot prove the falsity of Brady's statement, and it is her burden to do so. *See Jacron*, 350 A.2d at 698 ("[T]he burden of proving falsity rests upon the plaintiff, since, under this standard, he is already required to establish negligence with respect to such falsity."). It is undisputed that Plaintiff was terminated and that there was an investigation into the lab's licensing issues. Plaintiff argues that she was not the subject of the investigation, but no reasonable jury could conclude that an investigation that found she was responsible for the lapse of the CLIA license did not constitute an investigation of her.

Because Brady's statement was fundamentally true, Plaintiff also cannot satisfy the third element, which requires that a defendant be at fault in communicating a defamatory statement. "Fault can be shown by proving negligence by a preponderance of the evidence, or malice by clear and convincing evidence. . . . Malice is defined as making the statement while knowing of its falseness or with reckless disregard for the truth of the statement." *Murray v. United Food & Commercial Workers Union, Local 400*, 229 F. Supp. 2d 465, 477 (D. Md. 2002), *aff'd*, 100 F. App'x 165 (4th Cir. 2004). Even if Plaintiff were correct that she was not technically investigated, she has not presented evidence that Brady made the statement with knowledge that is was false. Nor could a reasonable jury find that Brady made the statement either negligently or with reckless disregard for its truth. Brady needed to inform hospital staff that Plaintiff would not be returning, and she did so having just terminated Plaintiff after an investigation that found her responsible for a serious licensing lapse. Therefore, because Plaintiff has failed to demonstrate a prima facie case of defamation, Defendants' motion for summary judgment is granted.

## VI. **CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment is granted and

the Plaintiff's motion for partial summary judgment is denied.


Date: August 17, 2010                          /s/
                                        J. Frederick Motz
                                        United States District Judge